UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES TIGNER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 19-CV-3101 |
| DR. MARCOWITZ, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

On May 30, 2019, Plaintiff filed this case pro se from his detention in the Rushville Treatment and Detention Center. He pursues a claim against Dr. Marcowitz, the doctor at the facility, for constitutionally inadequate medical care following Plaintiff's hip replacement surgery in April 2018. Plaintiff has since been released from the facility.

Dr. Marcowitz moves for summary judgment. At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Defendants' proposed facts are accepted to the extent

supported by cites to admissible evidence and not disputed by Plaintiff.  Fed. R. Civ. P. 56; CDIL-LR 7.1(D).

In order to survive summary judgment, Plaintiff must point to evidence which allows a reasonable inference that Dr. Marcowitz acted "purposefully, knowingly, or recklessly" and that the medical care Dr. Marcowitz provided was "objectively unreasonable." Turner v. Paul, 963 F.3d 1011, 1015 (7th Cir. 2020).  A purposeful, knowing, or reckless state of mind is more than negligence or even gross negligence.  Id.; Pittman by and through Hamilton v. County of Madison, 970 F.3d 823, 828 (7th Cir. 2020)("At bottom, Miranda's first inquiry encompasses all states of mind except for negligence and gross negligence.").  Whether the medical care provided was objectively unreasonable requires consideration of "'the totality of facts and circumstances faced by the individual alleged to have provided medical care" without regard to the provider's subjective beliefs.  Turner, 963 F.3d at 1015 (*quoting* McCann v. Ogle County, 909 F.3d 881, 886 (7th Cir. 2018).

No rational juror could find that Dr. Marcowitz's treatment decisions were objectively unreasonable.  The evidence shows that Plaintiff received a total hip replacement on April 4, 2018.  Plaintiff

had a follow-up appointment with the surgeon, Dr. Crickard, about two weeks later, who recommended physical therapy and another follow-up appointment in one month. [Def's Undisp. Facts 5, 14, 15.]

On April 22, 2018, a few days after the follow-up with Dr. Crickard, Plaintiff reported to the facility's health care unit because Plaintiff's dressing was saturated. [Def's Undis. Fact 18.] The nurse noted signs of infection, and Dr. Marcowitz saw Plaintiff the next day. Dr. Marcowitz came to a different conclusion, noting that the wound was clean and dry, with no drainage, redness, or tenderness. [Def's Undis. Fact 24.] Dr. Marcowitz next saw Plaintiff on May 3 and ordered an x-ray and a culture to check for infection. The culture showed the presence of staphylococcus aureus, which is a common bacteria that can cause infection if conditions are favorable. [Def's Undis. Facts 28-32.] On May 7, 2021, Dr. Marcowitz prescribed Augmentin for two weeks and admitted Plaintiff to the facility infirmary two days later for observation.

Plaintiff saw the surgeon, Dr. Crickard, for a follow-up on May 10, 2018. Dr. Crickard recommended continuation of the Augmentin and a follow-up in one week. Four days later, Dr.

Crickard recommended using a "wound vac" to remove excess drainage and promote healing. [Def's Undis. Facts 42-46.] Construing inferences in Plaintiff's favor, the wound vac was not provided until after May 17, but there is no information suggesting that Dr. Marcowitz was responsible for that delay. [5/17/18 Quincy Med. Group Record, recounting that the facility had not ordered the wound vac because a nurse had determined that the wound was not draining.]

Dr. Marcowitz saw Plaintiff on May 21, 2018 and continued the Augmentin and wound vac. Plaintiff saw Dr. Crickard on May 24, 2018, who continued the antibiotics and instructed that the wound vac should cover the whole wound, which implies that the wound vac had not been correctly applied, but there is no more information about who was responsible for applying the wound vac. [5/24/2018 note from Dr. Crickard, d/e 63-3.]

According to Plaintiff's medical records, Plaintiff's wound stopped showing signs of infection by June 6, 2018. [Def's Undis. Fact 60.] Dr. Crickard noted in a June 5 follow-up that no drainage was observed on the dressing and that the incision looked better. [6/5/2018 note from Dr. Crickard, d/e 63-3.]

Over the next year, Plaintiff continued to complain of pain and of what he believed were recurrent infections. Many of those subjective complaints could not be objectively verified by Dr. Marcowitz or Dr. Crickard. Dr. Marcowitz repeatedly examined the surgical site, ordered pain medicine, ordered an antibiotic several times, and ordered several cultures, blood tests, and x-rays. Plaintiff does not dispute that he did not partake of the physical therapy offered on any regular basis. [Def's Undis. Facts 60-145.]

In June 2019, Plaintiff asked for a second opinion. Dr. Marcowitz referred Plaintiff to another orthopedic surgeon, Dr. Gonzalez, for a second opinion. [Def's Undis. Facts 145-146.] Also in June 2019, Plaintiff reported that his incision had opened, and a nurse noted copious drainage and swelling. [Def's Undis. Fact 153.] Dr. Marcowitz saw Plaintiff the next day and ordered cultures and Augmentin. The cultures showed the presence of staphylococcus aureus, but a follow-up blood test showed a normal white blood cell count, which indicated no infection, according to Dr. Marcowitz. [Def's Undis. Fact155.] Plaintiff does not dispute that he refused further dressing changes on July 3, 2019, indicating the wound had healed. [Pl.'s 156.] In August 2019, Plaintiff again reported

swelling, and Dr. Marcowitz again ordered antibiotics and more cultures.  The cultures showed alpha streptococcus, which is a common bacterium and not streptococcus pneumoniae, which can lead to serious infections, according to Dr. Marcowitz.  [Def's Undis. Fact161.]

     Plaintiff saw Dr. Gonzalez in October 2019 for a second opinion.  Dr. Gonzalez ordered labs, cultures, an x-ray, and a CT scan, all recommendations which Dr. Marcowitz followed. [Def's Undis. Fact 164.]  The x-ray showed no "radiographic evidence of acute disease" and an intact joint replacement.  [Def's Undis. Fact 167.]  Neither Plaintiff nor Dr. Marcowitz say what the CT scan showed, and the Court did not find those results in the record after a cursory search.  Dr. Marcowitz avers that the blood labs from December 2019 showed a normal white blood cell count but he does not explain other values which appear to be out of range.  Plaintiff offers medical records which show that he continued to have difficulty with periodic swelling and discharge near the surgical site in 2020.   [2/21/20 medical notes dated 2/21/20, 3/15/20, 7/13/20, 63-2, pp. 26, 28, 30.]

Plaintiff was scheduled to see Dr. Gonzalez in January 2020 for a follow-up, but Dr. Gonzalez cancelled that appointment. The appointment then could not be rescheduled, at least as of the date Dr. Marcowitz signed his affidavit in May 2020, due to the pandemic. [Dr. Marcowitz Aff. ¶ 170.] Dr. Marcowitz avers that, to his knowledge, Dr. Gonzalez has not recommended any other tests or course of treatment. Id. ¶ 171. Dr. Marcowitz filed his summary judgment motion in August 2020, and Plaintiff was released from the facility in April 2021.

Plaintiff argues that Dr. Marcowitz should have promptly referred Plaintiff to Dr. Crickard for corrective surgery at the first sign of infection or to a different surgeon when Dr. Crickard did not perform corrective surgery. However, Plaintiff has no evidence that corrective surgery was the proper course of treatment. Dr. Crickard did not recommend corrective surgery, nor does Plaintiff point to any recommendation from Dr. Gonzalez for surgery. Dr. Crickard recommended the continuation of antibiotics and the wound vac, both of which successfully cleared Plaintiff's infection, at least temporarily. Plaintiff contends that his need for another surgery

was obvious, but that is not something within a layperson's knowledge.

Plaintiff also argues that Dr. Marcowitz's approach caused Plaintiff to develop multiple, recurrent infections at Plaintiff's wound site. An inference does arise that Plaintiff did have recurrent infections that resolved with antibiotics but then returned, but that does not mean that Dr. Marcowitz's approach was outside the acceptable standard of care. Dr. Marcowitz avers that "[c]ultures of Mr. Tigner's left hip, both anaerobic and deep tissue cultures, have only revealed the presence of common, relatively harmless bacterium that do not warrant higher acuity care. Despite that, when Mr. Tigner presents with signs of an infection, I treat him with a course of antibiotic, which has been successful in the past." [Dr. Marcowitz Aff. ¶ 172.] Dr. Marcowitz followed all of Dr. Crickard's recommendations, sent Plaintiff for a second opinion, ordered the diagnostics tests recommended by both specialists, and also repeatedly ordered his own tests. Neither Dr. Marcowitz nor Dr. Crickard were able to objectively correlate Plaintiff's subjective complaints of pain and difficulty functioning. In short, Plaintiff believes that Dr. Marcowitz should have done something different,

but no competent evidence in the record suggests what that something different should have been.

**IT IS ORDERED that Defendant's motion for summary judgment is granted. [56.] This action is dismissed, with prejudice. Plaintiff takes nothing. The clerk is directed to enter judgment.**

**If Plaintiff seeks to appeal, then Plaintiff must file a notice of appeal in this case within 30 days of the entry of judgment.**

ENTERED: June 30, 2021

FOR THE COURT:

<u>   s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE